Today on behalf of plaintiff appellant Manning Rollerson and the community members of Freeport's East End, we appear before you to request a reversal of the lower court's ruling at a pleading stage. First, as to whether Rollerson has pleaded a plausible substantial claim for intentional discrimination against Port Freeport based on Arlington Heights factors and under Second, a question of first impression before this court as to whether the district court has the power under the APA to review a jurisdictional decision made by the Army Corps of Engineers that it had not extended federal financial assistance to Port Freeport. The answer to both of these questions is yes, because the latter issue is one of first impression. We want to address it first, given the court's likely questions. What are the other means to review the Corps' jurisdictional decision under Section 602 that would provide Rollerson an adequate remedy for the Corps' action? After Sandoval, there is no such remedy unless there is review available under the APA. We know that Section 603 of Title VI provides for judicial review. We also know that Rollerson is seeking narrow review and narrow relief against the Army Corps of Engineers. We seek to review the jurisdictional decision on the limited question of whether there was federal financial assistance, and this review under Section 602 should be allowed after Sandoval. Section 603 of Title VI expressly provides for and contemplates judicial review to ensure that a federal agency is not abdicating its authority under Title VI. The court may review these claims, such as the ones mentioned in Weyerhaeuser by the U.S. Supreme Court just two years ago. This is the broad type of judicial review that's allowed for federal agency actions. While Rollerson's intentional discrimination suit provides an adequate remedy to address discrimination by the court, it is not adequate to address the Army Corps' jurisdictional decision because there was no federal funding which should be reviewed. Importantly, there is no case cited by the Army Corps of Engineers or in this circuit that addresses our specific situation. These cases are inopposite and not the circumstance at bar. I've tried to cluster these cases into three groups for the court's convenience. First, cases where relief was barred, meaning that the plaintiffs have either already obtained relief from the court or from the government directly, such as in a consent decree where enforcement has been undertaken. That is the case in Wheel, where a large, this case, progeny case line comes from. Similarly, cases where relief was barred, meaning barred by limitations, which is the case in Jersey Heights. The plaintiffs did not have a path forward against the government because their claims were time barred. That's the first cluster cases, both distinguishable because here Rollerson had a opportunity for a remedy against the federal government, which was to file its administrative complaint. That complaint was refused based on the question for jurisdictional decision, and we believe that that review should be allowed. The second group of cases is the cases involving the scope of the suit, meaning the situation where a plaintiff is seeking overbroad relief, such as agency supervision by the courts. That's the case presented in Washington Legal Foundation, or the plaintiff has challenged nationwide decisions by an agency, such as in Counsel for the Blind, or a proceed plaintiff has brought vague sweeping allegations, such as in Prescar. We believe, again, these cases are distinguishable because it is broad programmatic relief challenges that are being sought by the plaintiffs, unlike a very narrow review of a jurisdictional decision made by the federal agency. The third group of cases, I would call those that lack specificity. These are simply plaintiffs that failed to identify a specific agency action or a group of programs that the federal agency was undertaking that are objectionable. These are the cases like Sure or Doe, and we find these are, again, distinguishable because our complaints against the Army Corps of Engineers is clear. We believe they made an incorrect jurisdictional decision, and we believe federal funding was extended to Port Freeport. That is a statutory determination based on an existing federal statute that could be reviewed by a court. Importantly, and I really want to emphasize this with my time, is that these cases all recognize limited review as possible. In Counsel for the Blind, footnote 68, agency action is presumptively reviewable, citing a court case that we cited to this court, Abbott Laboratories v. Gardner. In Wheel, the court recognized at page 749, direct quote, authorization to sue federal government in a situation-specific suit for improperly funding a particular entity or enterprise is not the same as to permit a plaintiff to demand across the board judicial supervision of continuing agency enforcement. We would suggest our case is more like the former referenced in Wheel as opposed to the latter, which is what they objected to by the plaintiff seeking relief in that case. Finally, and sure, footnote 23, courts have allowed actions directly against funding agencies in narrow circumstances. I would like to bring some of those narrow circumstances where relief has been found in court. Ms. Dinn, first I want to point out or ask you about something I noticed about the city of Freeport because you're talking about some sort of disparate impact claim. I looked Freeport up in Wikipedia. I think we can take judicial notice of the fact that as of 2018, the population of Freeport was about 20% Hispanic and 20% African-American, and then perhaps 20% white. Don't hold me to those precise numbers. Freeport, according to census figures, or at least the local government, was a decidedly minority-majority town. Furthermore, the figures that you cite for the population of this east end are approximately consistent with those of the town in general. Where have you alleged a plausible factual basis for any kind of racial discrimination by a minority-majority town against minorities within a minority-majority town? Yes, Your Honor. We believe that because of the targeting of this particular neighborhood, which is majority-minority as the court recognizes, because of the historical situation where this is where the minorities in the town, specifically African-Americans at the time back in the 30s, were forced to locate because of segregation restrictions that were in place at the time passed by the city of Freeport in 1930 and 1932. That led to that area being somewhat a spot for businesses and residences to grow for the African-American community. If that were the case, you'd be going under historical preservation statutes, but you're not. You're alleging disparate impact discrimination, and that means, it seems to me, that one group of minority protected minority citizens is being disadvantaged to the benefit of somebody else who is not the minority. But they're all minority, so it sounds like that's got to be geographical rather than minority-based discrimination. Well, the actor here is actually the Port of Freeport, and we believe there being an organization is different than having a demographic profile. And here, because we have this particular area and historic nature of the area, there is a predominance of this. The port cannot be conflated. You can't conflate the port with the city, so maybe that undermines my idea about disparate impact. But the port and the city are two distinct entities, but the port is operating geographically in an area that may be predominantly minority, not simply African-American at this point in time. I think you're pleading to say that, but within a minority-majority municipality. It's something to ponder. I don't want to take all your time on it. I think the problem is we believe there are underlying violations of federal law here, so regardless of what the population that's impacted, there is a violation of federal law, and it has an adverse effect on a predominantly minority group. And again, the actor here is Port Freeport, and despite what the demographic or economic makeup of this community is, there is an impact from a discriminatory basis of the actions that are taken in violation of federal law, as we allege, that amount to discrimination in this case. Okay, and what do you, in saying that you think the district court had jurisdiction under the APA to challenge the Army Corps' disavowal of its own jurisdiction, what are you going to get out of that? To review, we are seeking, as far as our relief, we are seeking a review of the federal financial assistance determination that was made by the port. If, to the extent that there was federal financial assistance provided under section 195.2D of that regulation adopted by the Department of Defense, then we would be entitled to have the Army Corps of Engineers reopen the administrative complaints and possibly pursue an investigation at its discretion, but we're seeking. So, at bottom, the most you could get is an investigation, I suppose, but let me ask you to explain. Alexander B. Sandoval said that there was no cause of action, that the only cause of action under 601 is for intentional discrimination, and the plaintiffs could not bypass that to go to a disparate impact theory. Why doesn't that theory apply here to prevent this claim that you're making? Well, there's nothing in Sandoval that didn't say that that jurisdictional decision, as here, was not still reviewable by the federal agency. It just meant the plaintiffs couldn't sue directly under section 602 against the discriminating entity for disparate impacts. It left open the question as to what level of enforcement was against the federal agency with respect to section 602, which we would argue, based on section 603, which provides for judicial review, would be reviewable under the APA. The only barrier to analysis, and I think I spent my time, hopefully wisely, showing you that the cases supported in favor of that conclusion are erroneous and very distinguishable from the case at bar. I want to ask a question that goes back to the earlier point. How would this court expand without negatively impacting a minority community? I think they could expand by following federal law, which is what we say they should have followed to begin with. Here, the court delayed for 10 years after they knew it would pursue this expansion project, following the directives that were given by the Army Corps of Engineers, that it would need to comply with Title VI and would need to comply with the Uniform Relocation Act. They delayed a decision to invoke eminent domain for many years. It is record in the court's minutes that they knew, in 2016, that they were going to adopt— The fact that they're messing up and not following rules and all that does not prove intentional discrimination. My question is, how do you connect the mistakes, if you will, or the screw-ups to discriminating against a minority community if any expansion of the Uniform Relocation Act is not necessary? Our view is not necessarily that the court isn't allowed to expand. It's that it's not allowed to expand on a discriminatory basis. If the court is undertaking and doing things in violation of federal law in a way that disparately impacts or discriminates against a population because they're seeking an economic benefit, we think that they have a duty to comply with that federal law, as stated in the Army Corps of Engineers' own agreements with them in financing the port expansion as far as the deepening of the channel. We don't believe that that violation of federal law is just obviated by the fact that all of a sudden you're in a majority-minority town. Those federal laws exist for a reason to make sure that those protections are available. The protections are available for the community and people aren't taken advantage of in an improper way. Ms. Stinn, your original time has ended. You have five minutes for rebuttal. We'll go to Mr. Abrams. May it please the court, my name is Barry Abrams. It's my pleasure to represent the Brazos River Harbor Navigation District of Brazoria County, Texas, also known as Port Freeport. The port, as Judge Jones has noted, is a separate Texas governmental entity. It operates a deep water port in Texas. It has a governing body, which is a port commission, which is popularly elected, which is likewise separate and distinct from the governing body of the city of Preport. As the court is aware, the port has embarked on a phased expansion of its land-based activities to complement a project to deepen its harbor. Mr. Rollerson, the appellant, claims to be a property owner. He claims to have received an offer to buy his property, and he originally brought his claim under the Uniform Relocation and Acquisition Policies Act, which sketches out the procedural provisions that Mr. Rollerson is complaining that the claim, which he did drop, is that there is no private cause of action under the Uniform Relocation and Acquisition Policies Act of the sort that Mr. Rollerson attempted to bring, and it also was a problem for him because under this court's decision in Gulsby v. Blumenthal, there is a causal nexus required between the use of federal funds and the acquisition of property. In this instance, there's no dispute, as far as I'm aware, that everyone agrees that no federal funds are being used by the port to acquire the adjacent property. So he had no Uniform Relocation and Acquisition Policy Act claim. He then attempted to retool that or repurpose that into the Title VI claim, which requires proof of plausible, intentional, purposeful racial discrimination. The court moved to dismiss the case both on the basis of lack of standing and on the basis that Mr. Rollerson had not articulated a plausible claim of intentional racial discrimination when all it was doing was acquiring the property immediately adjacent to the port for its not agree with the standing argument, but did dismiss the case on the basis that there's no plausible racial discrimination claim asserted here. And that, we contend, is the right decision for a threshold reason, which is that to prove under Title VI an intentional racial discrimination claim, the standard is essentially the same as an equal protection claim, and it requires proof of differential treatment of similarly situated property owners based upon race or some other independent direct or circumstantial evidence of a discriminatory animus tied to race. Here, that is absent. As Mr. Rollerson has acknowledged, there's no suggestion that the port has treated any of the property owners in this adjacent area differently in its property acquisition offers. Under this court's decision in Stoneburner, the absence of any evidence, pardon me, any allegation, I should say, of a similarly situated group that is not a racial minority that has been treated dissimilarly is fatal to this claim. Now, the appellant has referenced some out-of-circuit authorities. There's a case they rely very heavily on that's out-of-circuit to imply that even in the absence of the existence of a similarly situated discriminated minority member, if they have independent evidence of racial animus, they can prevail. First of all, that case is not binding. Second of all, that case involved direct evidence of that without more on the facts of our case, which is simply a land acquisition policy to acquire adjacent property that no one disputes is contiguous and most suited for the port's expansion. Basically, it's fatal to this case. There's no dispute that everyone gets the same opportunity. There's no dispute that everyone's being treated equally. There's no dispute that the impact of the expansion activity on the potential sellers is the same. So, that is a threshold matter we thought and do believe the court correctly found was fatal to Mr. Rolderson's claim. The plaintiff attempted to use the Arlington... Let me just clarify one thing. You say nobody, no party denies that federal funds have not been used in this acquisition project. Aren't they contesting that? The issue, there are two different federal fund nexus issues, Your Honor. The first is whether federal funds are being used to acquire the property of the plaintiff or others. I don't believe there's any dispute that no federal funds are being used for the property acquisition program. The second nexus or federal funding nexus is disputed by Mr. Rolderson. We happen to think he's wrong and that the record is clear about it, but Mr. Rolderson does contend that the port receives federal funding, which means that the port has received some programmatic funding, which does implicate Title VI. And because of the port's concern that that was a record confusing issue, we stepped around that. That's really not relevant to the trial court's decision, but it is relevant to the dispute between the court and Ms. Dinn. We don't have a dog in that fight and we chose... No more. Thank you. Yes. There is a critique in the appellate's briefing of the district court's analysis of the Arlington Heights factors. We've addressed that in our briefing. There's no historical nexus between the history of racial misconduct in the region embarked upon according to the appellate by the city of Freeport and Port Freeport. The record's devoid of any racially inappropriate behavior by Port Freeport, period. And so there's simply no port conduct historically or otherwise evidencing any racially discriminatory conduct. And similarly, there's no contemporaneous evidence of any racially discriminatory conduct by Port Freeport, much less the city of Freeport, which is, as Judge Jones has noted, is a majority-minority municipality. With regard to the sequences leading up to the port's decision, there's no dispute that the goal was to acquire all the adjacent property. There's no dispute that there's no action by the port picking and choosing selectively, treating one property owner differently than another property owner on the basis of race or national origin. And frankly, there's no dispute about the legitimacy or the rational basis, as Ms. Dinn has acknowledged, the rational basis for the port to expand. Mr. Rollerson's complaint at the root of his complaint is an attempt to use Title VI to impose on the port obligations under the Uniform Relocation Act that are inapplicable because the act is inapplicable. That's essentially what this is, is an attempt to use Title VI as an alternative vehicle to impose procedural obligations on the port that it does not have. Because of the emphasis in Mr. Rollerson's argument on the Corps of Engineers, I'd like, unless the panel has further questions, I'd like to relinquish my time to Mr. Rodriguez to address the issues involving the Corps. I'm sure he will take that minute and a half with great enthusiasm and we'll turn to Mr. Rodriguez. Thank you, Your Honor. Thank you. Unmute yourself. Unmute. Unmute, Mr. Rodriguez. May it please the Court, Jimmy Rodriguez here on behalf of the Federal Defendant, U.S. Army Corps of Engineers. The Supreme Court has recognized that in passing Title VI, Congress struck a compromise. On the one hand, a plaintiff would have the right of action against an alleged discriminating entity. In this case, Mr. Rollerson clearly has a right of action against Port Freeport. But on the other hand, Congress recognized that there would be no liability and lawsuit against the federal agencies, the federal government, that those charged with effectuating Title VI. Now, a plaintiff like Mr. Rollerson can't circumvent this congressional choice by asserting an APA claim, alleging that the federal government has failed to properly enforce Title VI. The APA is a default statute. The APA is widely recognized as applying only when a more specific substantive statute does not control the analysis or cause of action. As the Supreme Court held in Bowen, Congress did not intend the APA's general grant of jurisdiction to replace special statutory provisions and procedures. Here, the line of case law that we cited in our briefs stand for the proposition and hold that a plaintiff cannot sue the federal government for an inadequate or ineffectual or wrong administration or decision not to administer or enforce Title VI because those plaintiffs have an adequate alternative remedy. And that remedy is to bring suit directly against the alleged discriminator. As I mentioned earlier, and as the Supreme Court held, Mr. Rollerson availed himself of that exact remedy. And for that reason, the District Court properly held that he had an adequate alternative remedy. And as a result, there was no APA jurisdiction. Now, I want to respond to the appellant's attempt on appeal now to more narrowly their claims, to attempt to couch and cabin their APA claim as one at being very narrow in scope. And I have two separate and independent responses to that. First off, the courts have consistently held, whether through wheel or its progeny, that APA review of Title VI decisions is prohibited. And it doesn't matter how narrowly a plaintiff attempts to cast or cabin their APA claim. The initial determination here on federal financial assistance or not is merely one step in the process of which there are many. Whether to investigate, if an investigation is conducted, how thorough and comprehensive is that investigation, if a discrimination determination is made, what enforcement will be pursued or not. A plaintiff can't stop that process or pick a decision point at any point in that process and pull it out and attempt to narrowly challenge that under the APA. They're all part of the overall Title VII, Title VI, excuse me, enforcement decision. And for that reason, it cannot be pursued under the APA. The best analogy, and I agree with the appellants, there is no case with the same set of facts as presented to this court, whether in the Fifth Circuit or outside of the Fifth Circuit. But the best analogy that the cases have dealt with are claims that plaintiffs have made that a federal agency failed to properly process an administrative complaint. There are several cases where the plaintiffs argued that the plaintiffs failed to, that the federal government failed to promptly consider administrative claims or that the federal government ignored administrative claims. So, and I would refer to court to that one of the claims in wheel was this failure to act on an administrative complaint. The Garcia case out of the D.C. Circuit cited in a brief had a failure to act claim, and the Doe versus HHS case had a failure to act claim. So, if you view that failure to act on an administrative complaint in isolation, it seems to present a prototypical 7061 failure to act, agency action unlawfully withheld or unreasonably denied. But courts have not engaged in that analysis because there is the broader, more categorical rule that there is no APA review of a Title VI decision, even if it's in that case, it's a decision to maybe not devote enough resources to process complaints or not process complaints for some unknown reason. So, that's one response to the appellant's attempt to narrowly cabin their claims. The second response is based on Sierra Club v. Peterson, which is cited in our brief. It's an en banc decision from this court, from the Fifth Circuit. In that decision, the court held that a plaintiff cannot attempt to narrowly cabin and isolate a single administrative action and argue that that's what they're seeking to review, in this case, the federal financial decision or not. A plaintiff can't isolate that decision. When the court reads the complaint as a whole, and in particular, the relief requested, it becomes clear that their claim is much broader than that. In Sierra Club v. Peterson, the plaintiffs attempted to isolate several Forest Service timber sales, which were in and of themselves discrete final agency actions. But the Fifth Circuit held that, no, when you read the complaint, you're attempting to get at the overall management of the forest. So, here, a full and fair and complete reading of the complaint, in particular, the relief requested in the complaint, shows that this case is not about a narrow review of the Corps' preliminary jurisdictional decision. The relief requested is that the court, the district court, ordered the Corps to enforce Title VI and take action against the Port. The relief requested is that the court ordered the Corps to not fund Port Freeport with any type of federal financial assistance. So, under Sierra Club v. Peterson, and we cite those sections of the complaint in our brief, and the record sites are 535 and 541, those record sites to the relief requested in the complaint, when read as a whole, it becomes clear that this is, in fact, an attempt to compel the Corps to exercise its authority under Title VI to investigate and to actually bring enforcement actions against Port Freeport. I believe the other issues that are brought up by the appellant in their brief, and even today, are fully addressed in our brief and are also addressed in the district court's opinion, granting our motion to dismiss for lack of subject matter jurisdiction. But I certainly want to answer any questions that the court may have. If there are no questions, then I thank the court for its time, and I will relinquish the remainder. All right. Thank you, sir. Ms. Finn, rebuttal. That were made by counsel for the court, specifically, sorry, specifically in the statement that the lower court had found that Rollerson did not have standing. There was a finding of standing under 12B1 challenge that was made by the court, and that was clear in the memo of recommendation that the recommendation was adopted by the lower court. So there's not a question of the court's standing. I'm happy to address that in our brief as well. Further, the standard that's here for the court's review is under Arlington Heights, which the court made clear in its recent decision in VZ in 2016, which is the Voter ID Act case. The question first is, was racial discrimination a substantial or motivating factor in the court's conduct? And if that determination is made based on Arlington Heights factors, which, again, do not require direct evidence of racial animus, what it does is say we'll take a mosaic of factors under Arlington Heights. Several of them were ignored or rated as irrelevant by the lower court. We feel that the complete analysis was not done. The court has referred to as evidence. We are at a pleading stage, and we have pled a plausible substantial complaint based on the Arlington Heights factors. If that showing is made, then the burden then shifts to the court to demonstrate a reason or policy for its facially neutral but supposedly not racially motivated decision. That's in VZ, page 231 of that decision from the Fifth Circuit. That is the burden that's before us. The court has cited the court to equal protection cases, which also invoke a framework that's explained under Title VII cases that grow out of the McDonnell-Douglas decisions that are not applicable. Arlington presents a separate type of framework, as we've argued in our brief. Additionally, to address the court's discussion on federal funding, we absolutely state that federal financial assistance has been provided by the court to the I think he was referencing Givens. Any funding that's been provided by the Army Corps of Engineers to the port triggers Title VI. There's clear agreements as to what the application of the Uniform Relocation Act is to the port, where the port specifically agreed in those agreements of federal cost-sharing act agreement, as well as an MOU that are cited in our briefs that include obligations of the port to comply not only with the Uniform Relocation Act but also Title VI. These are important things for the court to be aware of as far as there are obligations imposed by federal funding, and the recipient of federal funding is subject to Title VI, regardless of what is using the federal funds for as to all things they undertake under current law. As far as what our relief is clear, I think our pleadings make clear that we are seeking review of the federal financial assistance decision, as argued in our briefing in the lower court. That is what we're seeking to review. I've explained that to the court today as to why the cases that are cited that are also outside of the circuit do not bind the court's ability to have this case go forward. And to wrap up, I just wanted to state in closing that the district court's decision should be reversed on both of the issues I mentioned. Rollerson's case must be allowed to proceed to the next stage for the following reasons. There was adequate pleading of an intentional discrimination against Fort Freeport based on the Arlington Heights under Iqbal. There was adequate pleading of federal financial assistance as acknowledged by the Army Corps of Engineers in their briefing. Judicial review is available on narrow jurisdictional issues of federal financial assistance, just like in any other case. And it's not a question here of agency's discretion, because there was no investigation undertaken by the Army Corps of Engineers. And there's no other adequate remedy after Sandoval to address the Section 602 failures by the Army Corps of Engineers. As far as the burden shifting for a facially neutral policy case, that does not require a McDonnell-Douglas framework. And that would not even happen until we get to a summary judgment stage. All right. We have your argument. And that's the close of our session for today, where this panel stands in recess. Thank you very much.